**J.A. MASSARO, William S. Kelton, A.C. Scott, Francis Sisco, James A. Pogno, Henry A. Guggi, Edward R. Klements, Charles E. Farrell, Robert E. Struck, Richard W. Hess and E.W. Michael, Jr., individually and as representatives of engineers similarly situated, Petitioners,**

v.

**BROTHERHOOD OF LOCOMOTIVE ENGINEERS, New Jersey Transit Rail Operations, and J.P. Carberry, Respondents.**

Civ. A. No. 84–2.

Special Court,
Regional Rail Reorganization Act.

Aug. 8, 1984.

Certiorari Denied Dec. 10, 1984.
See 105 S.Ct. 593.

Arnold B. Elkind, Elkind, Flynn & Maurer, P.C., New York City, for petitioners Massaro, et al.

Harold A. Ross, Ross & Kraushaar Co., L.P.A., Cleveland, Ohio, for respondents Broth. of Locomotive Engineers and J.P. Carberry.

Robert H. Stoloff, Deputy Atty. Gen. of N.J., Newark, N.J., for respondent N.J. Transit Rail Operations.

Before GASCH, Presiding Judge, and BRYANT and WEINER, Judges.

## MEMORANDUM OPINION

BRYANT, Judge.

This action is before the court on the petition of eleven locomotive engineers employed by respondent New Jersey Transit Rail Operations (NJT) and holding seniority rights on Consolidated Rail Corporation (Conrail) for review of an arbitrator's award as amended on December 14, 1982 by Neutral Referee Richard R. Kasher pursuant to Section 508 of the Rail Passenger Service Act (RPSA) as amended by the Northeast Rail Service Act of 1981 (NRSA), Pub.L. No. 97–35 (August 31, 1981), 95 Stat. 357, 669. 45 U.S.C. § 588.[1] The amendment to the award which is challenged relates to the seniority system applicable to engineers transferred from Conrail to NJT. The petition names as respondents the Brotherhood of Locomotive Engineers (BLE), the union representing Conrail's engineers, J.P. Carberry (Carberry), one of BLE's Vice Presidents and representative to the § 508 proceedings, and NJT.[2] Petitioners seek a declaration that the amendment to the award is null and void and that the original award of October 14, 1982 is in full force and effect as of January 1, 1983. Oral argument was heard on June 6, 1984. For the reasons stated herein, the petition is dismissed.

*Background*

As this court has noted in earlier cases, NRSA amended RPSA so as to provide for the orderly transfer of commuter services from Conrail to various commuter authorities. Sections 508 through 510 of RPSA prescribe the methods by which Conrail employees were to be transferred to Conrail's successors. Because a detailed description of these sections and of the arbitration proceedings involved in this case appears in previous opinions of this court,[3] we will only briefly review that background as it applies to this action.

Section 508 of RPSA provided for the negotiation of an implementing agreement by Conrail, the commuter authority which was to assume Conrail's commuter operations effective January 1, 1983 (in this case, NJT) and the representative for each craft or class of Conrail employees to be transferred (herein BLE). Further, § 508 provided for arbitration of an implementing agreement where an agreement could not be negotiated by August 1, 1982. Following negotiation or arbitration of the implementing agreement, § 510 of RPSA required negotiation of a collective bargaining agreement. 45 U.S.C. § 590.

The BLE and NJT were unable, pursuant to this scheme, to negotiate an implementing agreement for engineers to be transferred from Conrail to NJT and Neutral Referee Kasher was appointed to determine the agreement by arbitration pursuant to § 508. By telegram of September 17, 1982, Kasher set up a schedule for the procedural meeting and the submission of proposed implementing agreements. Respondents BLE and Carberry point out that among the several preliminary determinations made by Kasher was the conclusion that the proceeding was in the "nature of an interest arbitration" and that Kasher would "exercise the arbitrator's right to confer ex parte with party representatives, as designated in accordance with Paragraph (3)." Paragraph (3) required each party to designate two representatives; BLE designated respondent Carberry and

---

1. This court has dismissed petitions for review of other aspects of Kasher's original award in *United Transportation Union v. Southeastern Pennsylvania Transportation Authority,* 555 F.Supp. 1382 (Regional Rail Reorg. Ct.), *cert. denied,* — U.S. —, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983) (*UTU v. SEPTA* ) and *New Jersey Transit Rail Operations, Inc. v. International Brotherhood of Boilermakers, Ironship Builders, Blacksmiths, Forgers and Helpers,* 550 F.Supp. 1327 (Regional Rail Reorg. Ct. 1982) (*NJT v. IBB* ).

2. Although originally named in the petition, Referee Kasher was dismissed as a party respondent by order of this court dated May 29, 1984 and Martin E. Robins, NJT representative to the § 508 proceedings, was dismissed as a respondent by notice of petitioners on March 28, 1984.

3. *See* note 2, *supra; see also United Transportation Union v. Metro-North et al.,* 554 F.Supp. 429 (Regional Rail Reorg. Ct. 1983).

T.J. Cavan, BLE general chairman on Conrail.[4]

Following briefing by the parties and oral argument conducted at a public hearing, Kasher entered his Decision and Award on October 14, 1983. In his award, Kasher created a two-step process based on seniority in order to determine first, which employees were to come to NJT and second, the seniority method to be used after the transfer had occurred. The award provided that an order selection list was to be developed by alternating employees based on their level of seniority with their respective seniority districts at Conrail considering the size of each district. The order selection list would then be used to determine which employees were to be transferred to NJT.[5] Once the employees were transferred, seniority was to be determined on the basis of the employees' "earliest retained seniority dates as enginemen with Conrail or a Conrail predecessor railroad" (hereinafter "date of hire").[6]

Shortly after the issuance of the award the BLE sought clarification based on the belief that the date of hire portion of the award was inconsistent with preceding sections as well as with other arbitration decisions. In a letter to Kasher dated October 25, 1982, respondent Carberry wrote as follows:

> During the presentation of oral testimony, it was my understanding that the arbitrator would make himself available for Award clarification if any of the parties so desired. Therefore, I am requesting that the parties either meet or arrange for a multiple phone conference to review paragraph *IV Seniority*.[7]

Sometime during this same period the BLE asked NJT to agree to change the seniority system to be used after the transfer occurred from the date of hire system contained in the Kasher award to the order selection list method. Although NJT was agreeable to the change proposed by BLE, the parties thought that because there was a formal arbitration award it was appropriate for the change to be ratified by the neutral referee.[8]

On December 14, 1982, a conference call was held between Kasher and the representatives of NJT, BLE and Conrail at which time the parties informed Kasher that they had agreed to amend the seniority provisions in the Implementing Agreement and requested that Kasher confirm that amendment by writing. After the phone conference, Kasher sent a telegram to the parties which stated that "in view of the agreement by the parties [the neutral referee] hereby amends the award and establishes the existing order selection list as the NJTRO/BLE seniority roster effective January 1, 1983."[9] On December 30, 1982, BLE and NJT reached a § 510 collective bargaining agreement which incorporated the amendment to the award so as to provide for an order selection list seniority system. This instrument, however, was not ratified under BLE's Constitution until December 28, 1983.[10]

Some of the petitioners complained on December 29, 1982 to the BLE International President, John F. Sytsma that Kasher's reconsideration was unwarranted and that the method by which the award was amended was improper. Consequently, by letter dated February 22, 1983, Sytsma requested that Kasher reconvene the § 508 proceeding "in order to formally hear and render a decision on reconsideration in a

---

4. Affidavit of J.P. Carberry, March 16, 1984 ("Carberry Affidavit") at ¶¶ 14, 16.

5. Kasher's two-step process as well as the general procedure for establishing an order selection list is described in *UTU v. SEPTA*, 555 F.Supp. at 1385.

6. Implementing Agreement at p. 10, Exhibit 1 to Petition.

7. Carberry Affidavit, Exhibit I.

8. The record is unclear as to whether BLE initially sought clarification of the award because of its belief that the award was inconsistent or because it had reached an agreement with NJT regarding the change in the seniority system.

9. Carberry Affidavit, Exhibit J.

10. Carberry Affidavit at ¶¶ 32, 45 and Exhibit T.

more traditional form." [11] By authority of the National Mediation Board, Kasher reconvened the proceedings on May 19, 1983 and in attendance were the representatives of NJT, BLE and Conrail as well as approximately twenty individuals who were employed as engineers on NJT. At this hearing, petitioners advocated the date of hire system while opponents supported the order selection list method.

On March 2, 1984, following commencement of this action, Referee Kasher issued his findings upon reconsideration. After reviewing all of the arguments presented at the May 19, 1983 hearing, Kasher concluded that no basis had been established to justify a change in the order selection list system agreed to by the parties and confirmed in the December 14, 1982 award.[12]

The basis of petitioners' challenge to the amended award is that it was improper to substitute the order selection list in lieu of the "traditional" date of hire roster by ex parte action without the knowledge or consent of petitioners or other individuals represented by the BLE. Petitioners further assert that the May 19, 1983 hearing was merely "cosmetic" in that Kasher was expected to reaffirm his amendment not to change it.[13] In their motion for summary judgment, petitioners argue that the arbitrator failed to comply with the statute's requirements by revising his award at the urging of the respondents. Petitioners also maintain that the respondents were estopped from abrogating the date of hire method as expressed in the original award because this court upheld that method in *UTU v. SEPTA* and because choices already had been made as to where to work based on the original award. Finally, petitioners assert that there is no logical basis for the amendment to the award as it causes inefficient and inequitable results.

Respondents BLE and Carberry (hereinafter "BLE"), on the other hand, maintain that the order selection list method is incorporated in the § 510 collective bargaining agreement and is a fair and equitable method for allocating seniority standings. BLE claims that petitioners lack standing to set aside that agreement between the designated bargaining representatives because the power to grant and alter seniority rights has been given to the bargaining agents exclusively. BLE's second argument is that the December 14, 1982 order removing the obvious conflict between the provisions of the implementing agreement was proper and should be upheld, particularly in light of this court's narrow standard of review. Even if the December 14, 1982 proceeding was improper in some respect, BLE contends that the May 19, 1983 hearing cured any improprieties by giving petitioners a full and fair opportunity to be heard. Finally, BLE maintains that petitioners' claims are barred by the applicable limitations period and by the doctrines of estoppel, waiver and laches.

Similarly, respondent NJT asserts that the § 510 collective bargaining agreement rather than the implementing agreement governs the relationship between NJT and its employees; it stresses the transitional nature of the implementing agreement. Secondly, NJT argues that individual employees like the petitioners do not have a private cause of action to enforce the provisions of § 508 because the union is the party named in the statute to protect employee's rights. Furthermore, petitioners' claims are barred by the doctrine of laches, NJT asserts, because the unreasonable delay in bringing this action could result in a disruption in NJT's operations. NJT concludes that, in any event, determination of the order selection list method was fully within the arbitrator's discretion pursuant to § 508.

---

11. Carberry Affidavit, Exhibit O.

12. Affidavit of James S. Baker, March 19, 1984 ("Baker Affidavit"), Exhibit A.

13. *See* Petition at ¶ 22. Petitioners base this contention on respondent Carberry's comments

at the May 19, 1983 hearing that the arbitrator's duty was "to clear up the reconsideration, what it means, not to change it." Carberry Affidavit, Exhibit Q at p. 78.

In reply, petitioners claim that a § 508 agreement had to be negotiated by the parties before August 1, 1982 and that after that date, all matters in dispute had to be resolved by the referee. As a result, petitioners urge, any agreement reached by the respondents after August 1, 1982 was "ultra vires."

*Discussion*

As we have discussed on several prior occasions, this court has original and exclusive jurisdiction over actions involving interpretation of § 508 of RPSA pursuant to the jurisdiction found in § 1152(a) of NRSA. *UTU v. SEPTA*, 555 F.Supp. at 1387 (citing authorities). Although the parties urge the court to examine the circumstances of this case in a variety of ways, this court has stated the applicable test upon review in the following terms:

> This Court has held that judicial review of a neutral referee's award under § 508 is extremely limited and that petitioner must meet a heavy burden before it can succeed in having a referee's award set aside. *NJT v. IBB*, 550 F.Supp. at 1329. Section 508(d)(3) provides that such an award is to be "final and binding to the same extent as an award of an adjustment board under § 3 of the Railway Labor Act". Judicial review under that section is limited to consideration of whether the arbitrator failed to comply with the statute's requirements, failed to act within his jurisdiction or acted corruptly. [*UTU v. SEPTA*, 555 F.Supp. at 1387 (citing authorities).]

In *UTU v. SEPTA*, this court had occasion to review § 508(c)(5) which is also the basis for petitioners' challenge to the amended award in this case. That section involves the neutral referee's task to:

> determine the procedure for determining the seniority of such employees in their respective class or classes in Amtrak Commuter or with a commuter authority which shall, *to the extent possible*, pre-serve their prior seniority rights. [Emphasis added.]

In determining that Kasher complied with the statute's requirements in *UTU v. SEPTA*, the court found that he had "acted within the limits of his discretion" pursuant to § 508(c)(5). *Id.* at 1388.

Petitioners' argument appears to be that since this court upheld the date of hire method, any other seniority system is necessarily contrary to the provisions of the statute. This argument overlooks both the reasoning of this court in *UTU v. SEPTA* as well as the express language of § 508(c)(5). This court found that "Congress granted the neutral referee the discretion to determine the level of protection to be accorded to prior seniority rights in that the phrase " 'to the extent possible' in § 508(c)(5) clearly contemplate[s] that preservation of prior seniority rights is to be balanced against other considerations." *Id.*[14] Thus, it is clear that there is more than one possible seniority system which will satisfy the requirements of § 508(c)(5).

In his findings upon reconsideration Kasher noted that although BLE consistently advocated an order selection list system throughout the arbitration proceedings, Kasher imposed a simple date of hire system because NJT claimed that it could not live with a complex system. In view of the fact that NJT now agreed to the more complex system (order selection list), however, Kasher indicated that he had no objection to NJT and BLE entering into such an agreement. Kasher's findings also pointed out that the argument advanced by petitioners and others that a simple date of hire system existed previously on any of the predecessor railroads which build the Conrail system was untrue. After a thorough discussion of the complexities of the process of changing seniority and a recognition that other seniority methods exist that are equitable, Kasher concluded that the order selection list method was also a fair and equitable arrangement and that

**14.** The court also discussed the concept of prior seniority rights in *UTU v. SEPTA* and thus, will not repeat that discussion here.

there was no showing that favoritism played a role in the parties' agreement or in the issuance of the amended award.[15] Examination of Kasher's findings upon reconsideration indicates that he gave due consideration to the issue of preserving prior rights; the court finds that Kasher complied with the requirements of § 508(c)(5) and acted within his discretion in amending the award to provide for the order selection list seniority system.

Although far from clear in petitioners' submissions, it appears that they also challenge Kasher's amended award on the grounds that he either failed to act within his jurisdiction or acted corruptly when he amended the award at the request of respondents without affording petitioners an opportunity to be heard.[16] Petitioners' argument is without merit. As previously mentioned, and as petitioners readily admit,[17] this was not a grievance arbitration and Referee Kasher had informed the parties that he would be available for award clarification. Thus, when Kasher was informed by the representatives of NJT and BLE during the phone conference on December 14, 1982 that they had reached an agreement concerning the method of seniority, Kasher told them that "as they were the owners of the agreement, which in this case had been reached through an arbitration award, that they had the authority to change that arbitration by mutual consent."[18] This court cannot say that Kasher acted corruptly or beyond his jurisdiction when he amended the award to reflect the agreement reached among the duly designated representatives to the arbitration proceedings.

Moreover, petitioners' claim that the May 19, 1983 hearing was "cosmetic" is contradicted by the transcript of those proceedings and by Kasher's findings upon reconsideration. At the hearing, Referee Kasher told those present that he was giving them an opportunity to put their views on the record[19] and his findings, in which he determined that it was appropriate to consider *all* of the arguments presented at the hearing, indicate that the hearing was not merely a formality.[20] The court concludes that Referee Kasher made an independent determination that the order selection list system complied with the mandate of § 508(c)(5). The court also notes that any claim of impropriety is refuted by the fact that a collective bargaining agreement which incorporated the same order selection list system provided for in the amended award was ratified under the BLE Constitution on December 28, 1983.[21]

*Conclusion*

As Referee Kasher observed, the fact that some members of petitioners' craft of engineers are dissatisfied with the order selection list method "is not surprising, and, in fact, is not to be unexpected in any proceeding where employees with seniority rights on one property are transferred to another property where those seniority rights may undergo change or modification."[22] However, "[t]his court may not substitute its judgment for that of the referee"[23] and petitioners' dissatisfaction does not alter this court's role in reviewing the neutral referee's award pursuant to § 508. Based on the foregoing, it cannot be said that Kasher failed to comply with the statute's requirements or acted corruptly or beyond his jurisdiction simply because he

**15.** Baker Affidavit, Exhibit A.

**16.** Any notion that Kasher exceeded his jurisdiction under § 508 by infringing upon a subject more properly resolved by the § 510 collective bargaining process must be rejected as it was in *UTU v. SEPTA*, 555 F.Supp. at 1389.

**17.** *See* Petitioner's memorandum in support of motion for declaratory judgment at p. 2.

**18.** Baker Affidavit, Exhibit A at p. 14.

**19.** Carberry Affidavit, Exhibit Q at pp. 24–25.

**20.** Baker Affidavit, Exhibit A at pp. 8–9.

**21.** *See* note 10, *supra.* Moreover, as respondents correctly observe, a § 510 "agreement may modify the seniority provisions of a § 508 implementing agreement." *UTU v. SEPTA*, 555 F.Supp. at 1389.

**22.** Baker Affidavit, Exhibit A at pp. 14–15.

**23.** *NJT v. IBB*, 550 F.Supp. at 1331.

amended the award to provide for a seniority system different from the one advocated by petitioners. Petitioners have not met their burden; the petition must be dismissed.

## ORDER.

For the reasons stated in the accompanying memorandum opinion, it is hereby

ORDERED that the respondents' motion for summary judgment is granted; and

FURTHER ORDERED that petitioners' motion for summary judgment is denied; and

FURTHER ORDERED that the petition is dismissed.